**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SHANNON RENEE MCNEAL, | |
| Plaintiff, | |
| v. | Case No. 4:13-CV-1353 |
| FRANCIS SLAY, JR.;<br>    in his official capacity as a member of the St.<br>    Louis Board of Police Commissioners; | PLAINTIFF DEMANDS TRIAL BY JURY |

FRANCIS SLAY, JR.;
    in his official capacity as a member of the St.
    Louis Board of Police Commissioners;

    Serve: 1915 Olive Street
           St. Louis, MO 63103
           (Waiver of Service Requested)

THOMAS IRWIN;
    in his official capacity as a member of the St.
    Louis Board of Police Commissioners;

    Serve: 1915 Olive Street
           St. Louis, MO 63103
           (Waiver of Service Requested)

BETTYE BATTLE-TURNER;
    in her official capacity as a member of the St.
    Louis Board of Police Commissioners;

    Serve: 1915 Olive Street
           St. Louis, MO 63103
           (Waiver of Service Requested)

RICHARD H. GRAY;
    in his official capacity as a member of the St.
    Louis Board of Police Commissioners;

    Serve: 1915 Olive Street
           St. Louis, MO 63103
           (Waiver of Service Requested)

ERWIN SWITZER;
    in his official capacity as a member of the St.
    Louis Board of Police Commissioners;

    Serve: 1915 Olive Street

St. Louis, MO 63103
(Waiver of Service Requested)

D. SAMUEL DOTSON;
in his official capacity as the Chief of Police
for the St. Louis Metropolitan Police
Department;

Serve: 1915 Olive Street
St. Louis, MO 63103
(Waiver of Service Requested)

MARK GARANZINI, Office Coordinator of the
Prisoner Processing Division of the SLMPD, in his
official capacity as a civilian employee and in his
individual capacity;

Serve: 1915 Olive Street
St. Louis, MO 63103
(Waiver of Service Requested)

VINCENT SIMPHER, Commander of Prisoner
Processing Division of the SLMPD, in his official
capacity as a police officer and in his individual
capacity;

Serve: 1915 Olive Street
St. Louis, MO 63103
(Waiver of Service Requested)

ANDREW CREWS, Commander of the Warrant
Fugitive Section of the SLMPD, in his official
capacity as a police officer and in his individual
capacity;

Serve: 1915 Olive Street
St. Louis, MO 63103
(Waiver of Service Requested)

SLMPD DOE DEFENDANTS # 1-99;
(Hold for Service)

RICHARD H. GRAY, in his official capacity as
Director of Public Safety for the City of St. Louis;

Serve: 1200 Market Street

St. Louis, MO 63103
(Waiver of Service Requested)

ST. LOUIS DIVISION OF CORRECTIONS;
    Serve: 200 S. Tucker Blvd.
         St. Louis, MO 63102
         (Waiver of Service Requested)

DALE GLASS, in his official capacity as
Commissioner of the Division of Corrections;

    Serve: 200 S. Tucker Blvd.
         St. Louis, MO 63102
         (Waiver of Service Requested)

CORRECTIONS DOE DEFENDANTS # 1-99;
         (Hold for Service)

M. JANE SCHWEITZER, in her official capacity
as St. Louis Circuit Clerk;

    Serve: 10 N. Tucker Blvd.
         St. Louis, MO 63102
         (Waiver of Service Requested)

CIRCUIT CLERK DOE DEFENDANTS # 1-99;
         (Hold for Service)

and,

CITY OF ST. LOUIS, as a person under U.S.C. §
1983;

    Serve: Mayor Francis Slay
         1200 Market Street
         St. Louis, MO 63103

Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff Shannon Renee McNeal for her complaint against Defendants, states as follows:

1.      This is a complaint for declaratory judgment and damages for civil rights

violations arising out of incidents that occurred in St. Louis City, Missouri in August of 2009.

JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the federal constitution, and therefore, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

3.      This Court has supplemental jurisdiction to hear and decide claims arising out of state law pursuant to 28 U.S.C. § 1367.

4.      The relevant acts and omissions occurred in St. Louis City, Missouri; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

5.      Divisional venue is in the Eastern Division because the events giving rise to the suit occurred in St. Louis City. E.D.Mo. L.R. 2.07(A)(1), (B)(1).

6.      The State of Missouri has waived sovereign immunity against all Defendants by the enactment of Missouri Revised Statute § 105.711.

BACKGROUND

7.      Plaintiff Shannon Renee McNeal was born on April 26, 1972.  Her Social Security Number is 497-76-XXXX.

8.      At all times relevant, Plaintiff resided in St. Louis County, Missouri and within this judicial district.

9.      In April of 2009, the St. Louis Circuit Clerk's office and the St. Louis Metropolitan Police Department ("SLMPD") issued a felony warrant for a woman named Shannon Raquel McNeal in Circuit Court of St. Louis Cause Number 0722-CR10407 for her alleged failure to appear in Court.

10.     The proper defendant in Cause Number 0722-CR10407 was Shannon Raquel McNeal and not Plaintiff.

11.     Proper defendant Shannon Raquel McNeal had a date of birth of August 6, 1985 and was therefore 13 years younger than Plaintiff.

12.     Proper defendant Shannon Raquel McNeal had been murdered in January 2009, three months before the St. Louis Circuit Clerk's office and the SLMPD issued the warrant.

13.     Three months after the St. Louis Circuit Clerk's office and the SLMPD issued the warrant, on or about August 6, 2009, Plaintiff was traveling to the St. Louis Zoo with her son, daughter, and another child.

14.     During that trip, Plaintiff was pulled over by a Ferguson police officer.

15.     The Ferguson police officer asked Plaintiff to step out of the car.

16.     The Ferguson police officer notified Plaintiff that the St. Louis City warrant had been issued for her arrest.

17.     Plaintiff informed the Ferguson police officer that the warrant was not for her and that she had no pending criminal charges in the City of St. Louis.

18.     Plaintiff's children were in the car screaming and crying.  Plaintiff begged the Ferguson police officer not to arrest her in front of her children

19.     The Ferguson police officer arrested Plaintiff on the St. Louis City warrant.

20.     The Ferguson police officer told Plaintiff she was being arrested on the St. Louis City drug possession charge that carried a $20,000 bail.

21.     The Ferguson police officer would not have arrested Plaintiff if the St. Louis Circuit Clerk's office and the SLMPD had not issued an arrest warrant for a dead person.

22.     Plaintiff again explained to the Ferguson police officer that she had no pending drug possession charge and that the warrant was not meant for her.

23.     The Ferguson police officer transported to the Ferguson Police Department.

24.     Plaintiff was taken to booking where she was forced to remove her jewelry, have her picture taken and be fingerprinted by the Ferguson Police Department.

25.     Plaintiff again protested to the booking officer that the City of St. Louis Police had made a mistake.

26.     The Ferguson booking officer acknowledged that Plaintiff's fingerprints did not match but Plaintiff was told that she would have to have the SLMPD sort it out since they were the entity that issued the warrant for her arrest.

27.     The next day, Plaintiff was taken to the St. Louis Justice Center by two unknown SLMPD officers, SLMPD Doe Defendants 1 & 2.

28.     Plaintiff was taken to the St. Louis Justice Center for booking and was given an ID bracelet with her birthday and picture by SLMPD Doe Defendant #3.

29.     Plaintiff was again fingerprinted by SLMPD Doe Defendant #4, but her fingerprints came up as "No Match."

30.     Plaintiff told SLMPD Doe Defendant #4 that she had been arrested by mistake.

31.     Plaintiff went to pre-trial and spoke with SLMPD Doe Defendant #5.

32.     SLMPD Doe Defendant #5 looked up information on an SLMPD computer and told Plaintiff "this is not you."

33.     SLMPD Doe Defendant #5 informed Plaintiff that she would have to go before a judge and the judge would release her.

34.     Once at the Justice Center, despite Plaintiff's repeated protests that she was not Proper Defendant Shannon Raquel McNeal, the prisoner processing unit of the SLMPD, managed and coordinated by Defendants Mark Garanzini ("Garanzini") and Vince Simpher ("Simpher"), wrongfully confined Plaintiff in a holding pen and then later transferred custody of

Plaintiff to the St. Louis Division of Corrections ("Corrections"), to await additional processing on the warrant wrongly served upon her.

35.    Defendants Garanzini and Simpher had responsibility for the proper processing of arrestees at the Justice Center prior to the SLMPD's transfer of custody of said arrestees to the Defendant Corrections.

36.    Despite the fact that Plaintiff had identification demonstrating her true identity, despite the fact that the SLMPD had Plaintiff's fingerprints and despite Plaintiff's informing SLMPD employees in the prisoner processing unit managed by Defendants Garanzini and Simpher that she was Shannon Renee McNeal, the SLMPD employees in the prisoner processing unit treated Plaintiff as Proper Defendant Shannon Raquel McNeal and conveyed Plaintiff to the Defendant Corrections with charges that were not her's, but rather charges which belonged to Proper Defendant Shannon Raquel McNeal.

37.    Upon information and belief, the SLMPD verified Plaintiff's actual identity as Shannon Renee McNeal.

38.    The Warrant Fugitive Section, maintained and run by Defendant Andrew Crews ("Crews"), of the SLMPD reviewed Plaintiff's fingerprints and ascertained that she was in fact Shannon Renee McNeal and not Proper Defendant Shannon Raquel McNeal.

39.    Defendant Crews and other SLMPD employees in the Warrant Fugitive Section had actual knowledge that Shannon Renee McNeal was Shannon Renee McNeal and not Proper Defendant Shannon Raquel McNeal.

40.    The Warrant Fugitive Section notified Garanzini and Simpher of Plaintiff's true identity.

- 7 -

41.     Despite this knowledge, Defendants Garanzini, Simpher, Crews and other SLMPD Doe Defendants in the Warrant Fugitive Section and Prisoner Processing Unit failed to take appropriate measures to drop the charges of Proper Defendant Shannon Raquel McNeal wrongfully placed on Plaintiff and to secure Plaintiff's release.

42.     Instead, Defendants Garanzini, Simpher, Crews and other SLMPD employees in the Warrant Fugitive Section and Prisoner Processing Unit allowed Plaintiff's wrongful incarceration to continue.

43.     The SLMPD transferred Plaintiff to the custody of the City Division of Corrections.

44.     During that transfer, Plaintiff was assigned a Division of Corrections Caseworker, Corrections Doe Defendant # 1.

45.     During her encounter with Corrections Doe Defendant # 1, the Caseworker pulled up photos of Proper defendant Shannon Raquel McNeal and concluded that those were not photos of Plaintiff.

46.     However, Corrections Doe Defendant # 1 told Plaintiff that she would need to get an attorney or "call down to the prosecutors."

47.     Then, Plaintiff was told she had to go to the Division of Corrections' Workhouse.

48.     Plaintiff was forced to strip and put on an orange prison jumpsuit.

49.     Plaintiff was then forced to shower and be sprayed with pesticides by Corrections Doe Defendants #2 and #3.

50.     The pesticides burned Plaintiff's stomach and back.

51.     Plaintiff's doctors have told her that her skin cannot be repaired.

52.     Plaintiff was incarcerated for several days as she was unable to retain an attorney.

- 8 -

53.     Plaintiff never went before a judge.

54.     On or about August 7, 2009, St. Louis Circuit Judge Thomas Frawley ordered Plaintiff immediately released.

55.     Judge Frawley indicated on his Order that the proper defendant, Shannon Raquel McNeal was deceased.

56.     On August 8, 2009 Plaintiff was released from custody.

57.     However, Plaintiff lost her job as a bus driver for Metro for several months as a result of her wrongful incarceration by the Defendants.

58.     On December 8, 2009, Plaintiff filed a Petition for Expungement of Arrest Records in an attempt to clear her name.

59.     Plaintiff was required to pay for the expungement.

60.     Today, a search for Plaintiff's name in some public databases still shows the erroneous felony charge attached to her.

61.     Plaintiff now takes medication for high blood pressure.  Plaintiff never had a problem with high blood pressure before this incident.

62.     This is an action for money damages brought pursuant to 42 U.S.C. § 1983, because Plaintiff was wrongfully taken into custody, stripped, fumigated and jailed in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

63.     Plaintiff also alleges that each of these violations were committed as a result of the hiring, training, supervision, policies, customs, and practices, or lack thereof, of the St. Louis Board of Police Commissioners for the SLMPD, Corrections and the Circuit Clerk's office.

64.     Defendants' repeated refusal to verify Plaintiff's claims of innocence and misidentification shocks the conscience in that such conduct constituted deliberate indifference

- 9 -

or gross negligence to Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

65.     Plaintiff also has state law claims for false arrest and false imprisonment.

PARTIES

66.     Plaintiff is a citizen of the United States of America and a resident of the State of Missouri.

67.     Defendants Mayor Francis Slay ("Slay"), Thomas Irwin ("Irwin"), Bettye Battle-Turner ("Battle-Turner"), Erwin Switzer ("Switzer") and Richard H. Gray ("Gray") comprise the entire Board of Police Commissioners of the City of St. Louis. The individual board members have legal responsibility and policymaking authority for the SLMPD and are named in their official capacity solely to maintain this action for the claims alleged herein.

68.     Defendants Slay, Irwin, Battle-Turner, Switzer and Gray are responsible for the training and supervision of Defendants D. Samuel Dotson ("Dotson"), Garanzini, Simpher and Crews and the SLMPD Doe Defendants.

69.     Defendant Dotson is the Chief of Police for the SLMPD and is the highest ranking police officer in the City of St. Louis, charged with administering the police force, including training, supervising, disciplining, and dismissing individual police officers, including Defendants Simpher and Crews, as well as all civilian employees of the SLMPD, including Defendant Garanzini and the SLMPD Doe Defendants, as well as deciding which tasks police officers and civilian employees should perform. Defendant Dotson is sued in his official capacity as Chief of Police for the SLMPD.

70.     Defendant Garanzini, Office Coordinator of the Prisoner Processing Division of the SLMPD, is and was at all times relevant to the incidents described in this Complaint, a

civilian employee and supervisor for the SLMPD, acting in such capacity as an agent and servant of the SLMPD, acting under the control of Defendants Mayor Slay, Irwin, Battle-Turner, Switzer, Gray, Dotson and Simpher and acting pursuant to an official policy, custom, and/or practice of the SLMPD. Defendant Garanzini is sued in his official capacity as an employee for the SLMPD, and also in his individual capacity.

71.     Defendant Simpher, the Commander of Prisoner Processing Division of the SLMPD, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the SLMPD, acting in such capacity as an agent and servant of the SLMPD, acting under the control of Defendants Mayor Slay, Irwin, Battle-Turner, Switzer, Gray, Dotson and acting pursuant to an official policy, custom, and/or practice of the SLMPD. Defendant Simpher is sued in his official capacity as a police officer for the SLMPD, and also in his individual capacity.

72.     Defendant Crews, the Commander of the Warrant Fugitive Section of the SLMPD, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the SLMPD, acting in such capacity as an agent and servant of the SLMPD, acting under the control of Defendants Mayor Slay, Irwin, Battle-Turner, Switzer, Gray and Dotson and acting pursuant to an official policy, custom, and/or practice of the SLMPD. Defendant Crews is sued in his official capacity as a police officer for the SLMPD, and also in his individual capacity.

73.     The identities of the SLMPD Doe Defendants are unknown at this time.  The SLMPD Doe Defendants are police officers and civilian employees of the SLMPD involved in the processing and identifying of Plaintiff and the issuance of the warrant that led to her arrest.

The SLMPD Doe Defendants are sued in their official capacity as police officers and civilian employees of the SLMPD and also in their individual capacity.

74.     Defendant Richard H. Gray is the current Director of Public Safety for the City of St. Louis, charged with overseeing all aspects of the City of St. Louis's Division of Corrections, including the custodial care of pre-trial inmates at the Workhouse and the Justice Center and the training and supervision of the Justice Center corrections officers. Defendant Gray is sued in his official capacity, as Director of Public Safety.

75.     Defendant Corrections is the governing body and the employer for the Justice Center and the Workhouse and is responsible for the training and supervision of its corrections officers and other employees. Defendant Corrections has legal responsibility and policymaking authority for Defendant Corrections.

76.     Defendant Dale Glass ("Glass") is the current Commissioner of Defendant Corrections, charged with the custodial care of pre-trial inmates at the Workhouse and the Justice Center, and the training and supervision of the Justice Center corrections officers. Defendant Glass is sued in his official capacity, as Commissioner of Defendant Corrections.

77.     The identities of the Corrections Doe Defendants are unknown at this time.  The Corrections Doe Defendants are corrections officers and civilian employees of the Division of Corrections involved in the processing and identifying of Plaintiff.  The Corrections Doe Defendants are sued in their official capacity as police officers and civilian employees of the Division of Corrections and also in their individual capacity.

78.     Defendant M. Jane Schweitzer ("Schweitzer") is the current Circuit Clerk for the Twenty-Second Judicial Circuit of the State of Missouri, charged with the issuance and

processing of arrest warrants and the training and supervision of the Clerk's office personnel. Defendant Schweitzer is sued in her official capacity, as Circuit Clerk.

79.     The identities of the Circuit Clerk Doe Defendants are unknown at this time.  The Circuit Clerk Defendants are civilian employees of the Clerk's Office, charged with the issuance and processing of arrest warrants.  The Circuit Clerk Doe Defendants are sued in their official capacity as civilian employees of the Division of Corrections and also in their individual capacity.

80.     Defendant City of St. Louis is a municipal corporation under Missouri law. Defendant City of St. Louis is charged with the responsibility of supervising and operating Defendants St. Louis Metropolitan Police Department and Division of Corrections.

81.     At all times relevant to this case and in all actions and omissions alleged herein, all Defendants were acting under color of state law.

82.     As the direct and proximate result of the actions and inactions of Defendants, Plaintiff suffered the following injuries and damages:

    a.   Loss of her physical liberty for three days;

    b.   Loss of employment with Goodwill;

    c.   Violation of her constitutional rights under the Fourth Amendment to be free from unreasonable seizure of her person and the right to be free from unreasonable arrest;

    d.   Violation of her constitutional rights under the Fourteenth Amendment to be free from wrongful incarceration without due process of law;

    e.   Violation of her rights in the State of Missouri to be free from false arrest and false imprisonment.

<u>COUNT I — FOURTH AMENDMENT</u>

83.      For her first claim for relief, Plaintiff incorporates by reference the allegations of Paragraphs 1 through 82, as if fully set forth herein.

84.      Defendants subjected Plaintiff to an unlawful and unjustified search and seizure of her person in violation of the Fourth Amendment to the U.S. Constitution by one or more of the following acts:

     a.  Causing Plaintiff to be arrested without a valid warrant, probable cause, or reasonable suspicion of illegal conduct;

     b.  Transporting Plaintiff in their custody to the Justice Center, where she was searched upon intake;

     c.  Transporting Plaintiff in their custody to the Medium Security Institution, where she was searched upon intake;

     d.  Causing Plaintiff to be subjected to a search without a valid warrant, probable cause, reasonable suspicion of illegal conduct, or any other justification;

     e.  Causing Plaintiff to suffer physical injury upon the fumigation chemicals used during the intake process; and,

     f.  Creating and approving policies in which the misidentification and wrongful detention of Plaintiff could be perpetrated; and,

     g.  Creating and approving policies in which said misidentification could continue even after individuals in their employ recognized that a misidentification had occurred.

85.     The search and seizure suffered by Plaintiff was illegal and unreasonable, and deprived Plaintiff of her civil rights pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

86.     It was the policy or custom of the Defendants to inadequately train and supervise their officers or civilian employees to avoid the unreasonable seizure of individuals based on a wrongful identification.

87.     It was the policy or custom of the Defendants to inadequately train and supervise its officers or deputy sheriffs in proper identification procedures during arrests and detentions pursuant to and the execution of capias warrants.

88.     Defendants failed to adopt or promulgate precise and clear identification procedures, and adopted and permitted customs and practices which led to the misidentification and apprehension of Plaintiff.

89.     Defendants' procedures for arrest and detention of suspects was so carelessly drawn as to lead to misidentification in the case at bar.

90.     The foregoing acts or omissions by Defendants Slay, Irwin, Battle-Turner, Switzer and Gray, occurred through Defendants Slay, Irwin, Battle-Turner, Switzer, Gray, Garanzini, Simpher, Crews in their official capacities.

91.     The foregoing acts or omissions by Defendant Corrections occurred through Defendants Gray and Glass and officers of Defendant Corrections in their official capacities.

92.     The foregoing acts or omissions by Defendant Schweitzer occurred through said Defendant in her official capacity.

93.     At all times of the events described in this Complaint, the Defendants acted under color of state law.

94.     Defendants' policies, customs, and practices as alleged above similarly constitute a violation of and deliberate indifference to Plaintiff's constitutional rights.

95.     Defendants' conduct is outrageous and shocks the conscience.

96.     As a direct and proximate result of the actions and inactions of Defendants, Plaintiff suffered unreasonable seizure of her person without a warrant or probable cause in violation of the Fourth Amendment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants; declare that the foregoing policies or customs of Defendants to be unconstitutional; issue an injunction requiring Defendants to develop and implement adequate training programs for its officers and employees about citizen's rights under the Fourth Amendment; award Plaintiff compensatory damages against all Defendants for their violation of Plaintiff's constitutional rights under color of law; award Plaintiff punitive damages against Defendants in their individual capacities, for their violation of Plaintiff's constitutional rights under the color of state law; award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and grant such other and further relief as is available and appropriate under the circumstances.

## COUNT II — FOURTEENTH AMENDMENT

97.     For her second claim for relief, Plaintiff incorporates by reference the allegations of Paragraphs 1 through 96, as if fully set forth herein.

98.     By one or more of the following acts violated Plaintiff's clearly established constitutional right to due process under the Fourteenth Amendment not to be detained for an extended period of time without a court appearance:

    a.   Causing Plaintiff to be arrested and detained involuntarily without prompt access to the judicial system;

    b.   Failing to provide Plaintiff a means for initiating a challenge to the duration of her detention;

    c.   Failing to provide Plaintiff a means for initiating a challenge to the validity of her detention;

    d.   Failing to inform Plaintiff of available means for initiating a challenge to the duration or validity of her detention;

    e.   Failing to communicate Plaintiff's complaints about her unlawful detention to their superiors, to a prosecutor, or to a judge;

    f.   Failing to take any action to ensure that Plaintiff was held pursuant to a validly executed capias warrant;

99.    It was the policy, custom, and practice of the Defendants to inadequately supervise and train its officers or civilian employees, thereby failing to prevent the constitutional violations against Plaintiff, in one or more of the following ways:

    a.   Inadequately training or supervising officers or employees under their supervision to inform persons detained on a warrant, such as Plaintiff, of available means for initiating a challenge to the duration or validity of her detention; and/or,

    b.   Inadequately training or supervising officers or employees under their supervision to report the complaints of unlawful detention by persons detained on a warrant, such as Plaintiff; and/or,

    c.   Inadequately training or supervising officers or employees under their supervision in proper identification procedures for identification of detainees.

100.     The foregoing acts or omissions by Defendants Slay, Irwin, Battle-Turner, Switzer and Gray, occurred through Defendants Slay, Irwin, Battle-Turner, Switzer, Gray, Garanzini, Simpher, Crews in their official capacities.

101.     The foregoing acts or omissions by Defendant Corrections occurred through Defendants Gray and Glass and officers of Defendant Corrections in their official capacities.

102.     The foregoing acts or omissions by Defendant Schweitzer occurred through said Defendant in her official capacity.

103.     At all times of the events described in this Complaint, the Defendants acted under color of state law.

104.     Defendants' policies, customs, and practices as alleged above similarly constitute a violation of and deliberate indifference to Plaintiff's constitutional rights.

105.     As the direct and proximate cause of the foregoing, Plaintiff suffered the following injuries and damages:

   a.  Loss of her physical liberty for three days;

   b.  Loss of employment with Metro;

   c.  Violation of her right to Due Process under the Fourteenth Amendment of the U.S. Constitution.

106.     Defendants' conduct is outrageous and shocks the conscience.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants; declare that the foregoing policies or customs of Defendants to be unconstitutional; issue an injunction requiring Defendants to develop and implement adequate training programs for its officers and employees about citizen's rights under the Fourth Amendment; award Plaintiff compensatory damages against all Defendants for their violation of

Plaintiff's constitutional rights under color of law; award Plaintiff punitive damages against Defendants in their individual capacities, for their violation of Plaintiff's constitutional rights under the color of state law; award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and grant such other and further relief as is available and appropriate under the circumstances.

## COUNT III —FALSE ARREST AND FALSE IMPRISONMENT

107.     For her third claim for relief, Plaintiff incorporates by reference the allegations of Paragraphs 1 through 106, as if fully set forth herein.

108.     Defendants restrained, arrested, and imprisoned Plaintiff against her will without legal justification for a period of three days.

109.     Defendants knew or should have known that Plaintiff's arrest was illegal and there was no legal right to imprison Plaintiff because:

      a.   At the time she was arrested and at the subsequent inventory searches conducted on Plaintiff, she presented her driver's license issued to her by the State of Missouri and her social security card, both identifying her as Shannon Renee McNeal;

      b.   Throughout her incarceration, Plaintiff repeatedly told Defendants she was not Shannon Raquel McNeal and that she did not know and was not affiliated with Shannon Raquel McNeal;

      c.   Plaintiff was fingerprinted at least twice; and,

      d.   In other ways, to be determined.

110.     The false arrest suffered by Plaintiff occurred during an illegal search and seizure in violation of Plaintiff's rights under the Fourth Amendment and was without legal justification.

111.   As the direct and proximate cause of the foregoing, Plaintiff suffered the following injuries and damages:

    e.   Loss of physical liberty for three days;

    f.   Mental pain and suffering, including fear that she would never properly be identified and that she may be incarcerated indefinitely;

    g.   Mental pain and suffering, including shame, humiliation, and mortification from the indignity and disgrace of being arrested in front of her children, treated like a criminal, incarcerated for three days and losing her employment with Metro;

    h.   Loss of employment earnings and employment opportunity with Metro.

112.   At all times of the events described in this Complaint, Defendants acted under color of state law.

113.   Defendants' conduct constituted a willful violation of and deliberate indifference to Plaintiff's constitutional right to be free from wrongful and prolonged incarceration and deprivation of her liberty.

114.   Defendants' conduct is offensive, outrageous and shocks the conscience.

115.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants; declare that the foregoing policies or customs of Defendants to be unconstitutional; issue an injunction requiring Defendants to develop and implement adequate training programs for its officers and employees about citizen's rights under the Fourth Amendment; award Plaintiff compensatory damages against all Defendants for their violation of Plaintiff's constitutional rights under color of law; award Plaintiff punitive damages against Defendants in their individual capacities, for their violation of Plaintiff's constitutional

rights under the color of state law; award Plaintiff reasonable costs and attorneys' fees; and grant

such other and further relief as is available and appropriate under the circumstances.

HACKING LAW PRACTICE, LLC

/s/ James O. Hacking, III
James O. Hacking, III
jim@hackinglawpractice.com
34 N. Gore, Suite 101
Phone: (314) 961-8200
Fax: (314) 961-8201
